Good morning. We'll call our first case of the day, Alan Schmidt v. Skolas et al. Good morning, Your Honors, and may it please the Court, I'm Howard Bashman, Appellate Counsel for Plaintiffs, Plaintiff Appellant Alan Schmidt. With the Court's permission, I would like to reserve four minutes for a vote. Granted. Thank you. Your Honors, the question presented in this appeal is whether, on the record of this case, plaintiff's claims were properly dismissed at the Rule 12b-6 stage on statute of limitations grounds. Plaintiff submits that the District Court erred in two respects. First, it improperly relied upon news releases and internet postings, and even SEC filings by third-party purchasers of Genera's assets, whose SEC filings plaintiff had no reason to monitor. And second, plaintiff's invocation of the so-called discovery rule under Pennsylvania law raised questions of fact that necessitated postponing resolution of the statute of limitations question until either the summary judgment or trial stage. What's part of either the complaint or the record in motion practice that would lead us to know that there are questions of fact? What is it that was alleged in either instance that would lead us to that conclusion? The complaint in paragraph 236 on page 108a of the appendix states that plaintiff learned of the sale prices of the two most valuable assets of Genera in the year 2011. What does that have to do with reasonable diligence to discover the facts? In other words, the fact that he learned, well, fine. But under the discovery rule, he had to exercise reasonable diligence. Where is there anywhere in the record an allegation that would support that there was reasonable diligence on his part? The place where it is in the record is in connection with the motion for reconsideration where Mr. Schmidt came in and filed a declaration under penalty of perjury. Yeah, but you can't do that in reconsideration. You need to come forward when the defense is put forth under Pennsylvania law. You have that obligation. There are Pennsylvania cases that so state. Well, there was reliance on the discovery rule in opposition to the motions to dismiss. So that was one of the grounds that plaintiff advanced in the response. But you can't just say discovery rule. I mean, the district court says plaintiff's explanation that he was putting together all the facts and circumstances does not reflect an inability to know of his cause of action in spite of reasonable diligence. Plaintiff has not met his burden of demonstrating that the discovery rule should apply here. Tell me what's wrong with that In plaintiff's view, it's an extraordinary situation where the discovery rule can be invoked at the motion to dismiss stage to begin with based upon all of these extraneous documents that the defendants put in front of the trial court. Well, they're not extraneous documents. I'm looking at the complaint and I'm saying to myself, where in the complaint is there any allegation that would lead me to believe that the latest date of the events complained of is any later than May 2010, just on the face of the complaint? I understand that, Your Honor. But that was a transaction. The May 2010 date was when the IL-9 assets were sold to Legand Pharmaceuticals and also unbeknownst to plaintiff at the time to BVF that got involved by a person in the other half. Okay. But what event that is complained of occurred after May of 2010 as stated in the complaint? I don't disagree with what you're saying in regard to the fact that the purchases took place, that they all took place by May of 2010. What I'm saying is that plaintiff learned of what the sale prices were in 2011 and what the defense has shown is... Well, if he did learn, then he definitely could sue within the two-year period. I'm saying that he learned in 2000 and... Oh, okay. I understand what you're saying. That if he learned in 2011... That's what a full two years is about. You have that time during which you learn. And if he did learn... That is not the way the Pennsylvania law works with all due respect, which is that if a diligent plaintiff could not have learned until 2011, then the two-year period begins at that point and you don't look to see whether there's enough of the original two-year period left for a diligent plaintiff to sue in time. So what is there in the record that would say that he could not have learned, he somehow prevented or he exercised reasonable diligence but still was unable, in spite of his diligence, to learn? Give me some facts that are in the record that support that proposition. Well, again, the facts that are in the record are that he went to the website of Genera in August... I want to make sure that I'm saying this properly, but it's in the record at page 1687A of the appendix. And so Mr. Schmidt says that he went to Genera's website on July 6th, 2010 and July 9th, 2010, and that the update to unit holders dated May 21st, 2010, on which Genera relies in establishing that notice was because he went and looked for notices and didn't see it. But availability doesn't do it, does it? I mean, we've got a discovery rule, he has to exercise reasonable diligence and he knew this sale took place, he aversed in his complaint, his knowledge, he followed this company. I mean, it's extraordinary how much this man knew about this company and these assets. I still am What our submission is, is that until the sale price was disclosed that it was not possible for him to know whether the sale price was fair or not. And as I understand it, what the defendants are relying upon are SEC filings that were made by the purchasers of the assets. Let's say for a moment that the documents that the district court relied on are improper. There's obviously case law that says the AK should not have been considered in this context. I understand your Let's put that all aside for a moment. I think what we're all grappling with is when is the aha moment, right? And sort of why couldn't it have been earlier? We, you know, we finish each other's sentences. Okay. And each other's questions. So go ahead. Well, we're saying that we have them to my question, right? What was, was in 2011 when, when Argeis, which is in charge of, you're very clever in two, I think it's 236. You just say in 2011 comma, and then you go on. I mean, well, the reason that 2011 makes a difference is because the action was commenced on June 8th, 2012. And, and so anytime in 2011, if that's when the two year clock started would be timely enough. So even if we say it happened on July 1st of 2011, the earliest possible date that that would still make the case timely. But again, procedurally, what I'm grappling with. How was he stymied though between May 2010 and that 2011 date? You're saying that 2011, and what did you just say, July? No, I didn't give you a specific date in 2011, when the finances were. He said any time in 2011 would satisfy the under two years because it's in 2012. But at some point, the stymying that apparently, or the, the diligence he was exercising, and then all of a sudden, you know, it came to fruition sometime in 2011. But what is it that prevented him from before that asking around, doing some due diligence, taking somebody aside, making a phone call and saying, you know, solve these assets, you know, what, what'd you get for them? And let me, let me answer that because this, this is, this is the procedural unfairness. That, that the case represents, which is that the answer to that question could not have properly been put before the court by the plaintiff under the 12B6 procedural rules, because it has to be in the complaint itself. Well, he could have amended. That's what, that's what you do. You, you have, you have that burden under Pennsylvania law. I mean, there's cases. But the plaintiff sought to amend the complaint simultaneously with responding to the motions to dismiss. And at that point, the, the judge denied that request. So, I mean, the judge said the complaint was amended once. Well, but I don't think the amendment set forth what had to be set forth under the law. You're absolutely right. Under Pennsylvania law, that was a proper time to do it. The question is, what did you do at that time? So at that time, I know you, we were cut off from discussion about the declaration and what you did. But the, the point is, is what did you do at that time that would create the issue of fact that you alluded to at the beginning of your presentation that will now allow us to say, ah-ha, we should reverse, because not only did the district court rely on documents that it shouldn't have, but there, there is a genuine dispute that should be resolved other than in the fashion that it's been resolved. Right. And, and what we said was that if the court allowed this matter to be considered on a summary judgment record, that we would bring forth evidence showing that despite exercising due diligence, Mr. Schmidt was unable to find out the sale price at an earlier time. And let me draw a comparison between. The case law says, Pennsylvania, he may wait until the defendant asserts the statute of limitations defense as a new matter and file a response pleading presenting a factual denial of the defense consistent with application of the discovery rule. So that's when you, you had to put it forth. And the district court said, all you did was say, well, you know, we were putting the facts together and, and that doesn't do it. Well, the procedure in state court, which you're referring to is different from the procedure in federal court. It's the discovery rule. It's the Pennsylvania. Right. I understand. What I'm saying is that you can file factual averments in response to it, but here we're stuck with the complaint and saying, you know, here's where in the complaint we said that we found out and sued in time. I want to draw a comparison in my remaining 50 seconds to the defense's assertion of, of the waiver defense, which is one of the additional eight defenses they bring up as alternate grounds. And where, where they come in and say, you know, you waived the right to even bring this claim on a 12B6 motion, doesn't the plaintiff have the right to then come in and say, you know, here's all the evidence that we would, that we could bring before the court showing that that's not binding on us. It doesn't apply. And you just can't do that on a 12B6 motion. So what we're saying is that they, this was procedurally unfair by the fact that they got to bring in all this extraneous evidence. And we were not allowed to do so because if we had done so, the court would say, we're not allowed to consider that on a 12B6 motion. Let me ask you. I want to ask about the 8K, but go ahead. Yeah. Cause this is about the question, what he just raised. Let me ask you this question about that. So is it your position that the mistakes of the district court in its consideration of the 8K and other, what you've described as extraneous documents is, is that error sufficient to overcome the deficiency in your, your, your client's offering as to why they didn't come forward, he didn't come forward with sufficient information earlier? Assuming there is a deficiency, of course. And the answer is yes, because the trial court had to rely upon that extraneous evidence to get the dates that were applied to say that the plaintiff should have sued earlier. So we say yes. Which party has the burden of showing that the discovery rule applies? Ultimately, the burden, I believe, is on the plaintiff to convince the finder fact that the discovery rule applies. You, your party. Right. But again, this is a case where the court's supposed to be looking at the pleading. How did you meet the burden? If this were a summary judgment stage case and we didn't bring forth the evidence, I agree, that would be an issue. But we're saddled with only the complaint. I haven't said it's an issue. Asking a question. How did you meet the burden that you had to show the discovery rule applies? By, by saying in paragraph 236 of the complaint on page 108A of the appendix that, that this is when we learned of the sale prices. And, and I submit to the court that, that the complaint does show that this is a plaintiff who is someone who is trying to exercise all justifiable diligence to try to find things out. Well, the problem is that paragraph says, this is when the sale prices became available, right? And there's no averment, and maybe I've missed it, you'll point it out, where it is stated, this is when I found it out and I couldn't have found it out earlier because. Right. And that, that's what we would aim to supply if we were allowed to bring in extraneous evidence. Let's say extraneous evidence. Let's say we're at summary judgment, just for the sake of, you know, our better understanding of the situation. Is there some way in which he was prevented from finding out this information that you would put forth in summary judgment? Well, as, as shown in the declaration, he, he, the website was set up to give information to shareholders. Yeah, but you don't just rely on websites. You can pick up the telephone too. Well, he was picking up the telephone, yes. We have a case called NAHC in securities litigation from 2002 that says that district courts may take judicial notice of documents filed with the SEC but not relied upon in the complaint in a 12b6 motion, along with other financial information whose accuracy may not reasonably be questioned. Do you have case law that would undermine that or say that that is not good law in this circuit? I, I'm not, we're not asking to undermine that. What we're saying is that the SEC filings on which the court relied were filings that were made by the third party purchasers. And, and unless the plaintiff knew that these were the entities that purchased the assets, then he would have no reason to be checking their 8k filings. But that's a different issue from the issue whether the court can consider an 8k file with the SEC at the dismissal stage. I, I agree. The point is, was it appropriate for the court to consider it in connection with this plaintiff? Did he have reason to know that he should be monitoring the 8k filings of all companies? Right. Now I better understand. Thank you. We'll hear from you on rebuttal then. Thank you. Good morning, may it please the court. Michael Kipline for the Deckard Firm. I'm here this morning on behalf of two sets of defendants, the DNO defendants, who are the former directors and officers, and then the trustee defendants who are alleged to have sold the assets at unconscionable prices. Unconscionably low prices. Yes, and that, that is repeatedly alleged. And early. And early, yes, your honor. Your honor, I think it's important to look at these two sets of claims on their own for statute of limitations purposes. The claim against the D's and O's is that they failed to exploit these supposedly very valuable assets, that they failed to pursue alternatives to dissolution and liquidation, and that they wrongfully plunged this company into dissolution as some false pretext to later conduct a fire sale. At some too low price. Yes, exactly, at unconscionably low prices. So the claim is that they engaged in a wrongful dissolution. Now it is pled in this complaint repeatedly and extensively that there was a proxy that was disseminated and distributed to all shareholders including Mr. Schmidt. In that proxy, the management of the company and the D's and O's very clearly put the world on notice. We are liquidating. We are going to be selling these assets at pennies on the dollar. So our argument, your honor, is that... Did it say that specifically? Pennies on the dollar? I'm looking at page 18 of the complaint. It did, your honor, what it did was it projected a distribution ranging from one-fifth of one cent to 1.7 cents. I'm not sure that going into all this detail is moving the ball. Let me just kind of jump right to it. So one of the critical questions in determining error is when the district court focused on these so-called extraneous documents, documents that weren't alluded to in the complaint, weren't appended to the responsive pleadings, you know, was that improper? So we all have the background, so maybe you can just address that directly. Well, your honor, it was not improper to rely on those documents. You believe the district court did rely on those documents? Well, your honor, the district court's opinion does say that it is referring to website updates, publicly filed securities filings like the 8k that your honor mentioned, as well as the allegations of fact on the face of the complaint. As Judge Rendell pointed out, NAHC does allow the court to consider publicly filed documents that are filed with the SEC. That comes to us not only from NAHC but also from Buck v. Hampton. So the 8k filings are appropriately within the purview of the district court's ruling, and your honor, I would also cite the court to the pension trust case. Your honor, that the pension trust case also stands for that same proposition, and it's very interesting because in the... We just had 8k, that's one thing, but you referred to the websites, you know, it only takes a few extraneous documents to say, you know, this isn't a motion to dismiss, this is a summary judgment. Well, the website updates, they come from the Gennaro website, which the plaintiff was directed to go to in the liquidating trust agreement. It said the trustee may post documents there, and I would add, your honor, that this is a plaintiff who, as you have seen in the amended complaint, pleads lots of different facts and relies on lots of different things like press releases, and he himself relies on the website updates in at least two places in the amended complaint. So it seems awfully selective to us. We've heard and we've seen in the declaration that this plaintiff accessed the website. But in a motion to dismiss, I think what we're grappling with is, granted there are press releases alluded to other corporate documents, but is it proper on 12b6 for the district court to say, with regard to documents that aren't pertinent to the complaint or specifically averting the complaint, for that to be relied on in making a 12b6 determination? Yes, your honor, I believe he was entitled to rely on those documents under the law of this documents, and those documents are in the record. Website updates are pled in this very complaint. Now, Judge Schiller didn't need... I'm going to throw you a softball here, just to let you know. I'm bracing myself. It seems to me, if we have a discovery rule and there's a burden on the plaintiff, and the plaintiff comes forth and says, I didn't put all the facts together, all these other documents may actually be extraneous to the bottom line ruling that plaintiff didn't satisfy his burden. So that's why I asked you, do you agree that the court relied upon these documents in its ruling? I'm not so sure it did. Well, your honor, it's not entirely clear. The judge did conclude that there was a concession that the statute of limitations had been missed. So from that premise, he then went to examine the discovery rule and asked whether the discovery rule would be sufficient to save these claims. The discovery rule, as I think we've heard here this morning, puts the burden on the plaintiff to plead facts sufficient to toll the statute of limitations. And there's a case called... We're looking at either the complaint, the amendment to the complaint, the response to the motion to dismiss based on statute of limitations. We're not looking necessarily to the 8K or the other documents, are we? Well, the issue under Pennsylvania law is not what the plaintiff knew, but what the plaintiff through reasonable diligence could have discovered. And here on this record, we know a couple of facts that he knew of the existence of the aminosterol transaction and the IL-9 transaction, the last of which occurred in May of 2010. He pleads that. He pleads those facts. We know that he had access to 8K filings from several of the purchasers of the assets. So the burden is on him. In Southern Cross v. Kwong, which is 180.1.F.3.410, this court asked whether the complaint alleges facts sufficient to toll the statute of limitations, because that's his burden. And in that case, the court said the burden must be met on the face of the pleading. Now here, Judge Schiller, in concluding that this plaintiff knew, because there are lots of facts he plainly admits he knew, or could have known, is evident. And this court can rule in a matter of law that it was evident and supply the basis for refusing to apply the discovery rule. This plaintiff is admittedly an investment professional. He's admittedly a former high-ranking investment manager at Brown Brothers Harriman. He admits that throughout the years of more than 10-year ownership of these assets, or these stock holdings, he had numerous direct conversations with the defendants about the value and the prospects of exploitation of these assets. And he alleges in paragraph 10 of the amended complaint that he has, quote, contemporaneous tangible evidence of an incriminating nature, end quote. He also alleges that he had numerous direct conversations with the CFO, the CEO, and the vice president of the corporation. This is not your average plaintiff. This is not the plaintiff that we see in the cases cited by my opponent, where you have a medical patient who suffered negligence at the hands of surgery. This is not surgery. This one wasn't left on. No, no. And to put it in that analogy, I mean, in this kind of case, it'd be like an orthopedic surgeon who's complaining about an orthopedic procedure that he had. He's on a heightened state of awareness and knowledge and expertise. And the Pennsylvania Supreme Court says you can consider the nature of the plaintiff. And here, it wouldn't typically be a matter of record, but this plaintiff has pled it to a great degree. The other thing that's critically important in assessing what the plaintiff knew. How does that all help you? It's not clear to me. There is a principle in the Cecchio and the Fine case that says, while it's an objective test, it's sufficiently flexible to take account of differences among persons and their differing capacities to meet the circumstances that are confronting them. So what should be taken into account in this case? Well, in assessing reasonable diligence and what the plaintiff knew or could have known, you can take account of his unique status as an investment professional, intimately knowledgeable with this business. So we should require him to know more than the ordinary plaintiff in such a case. Is that not right? Well, it certainly suggests he had a greater capacity than most to find the kinds of things that the court would say he could have found and put him on notice. Well, it seems to me that goes against your position. It doesn't go before your position. Your Honor, I think that... I mean, if he's so much more knowledgeable than the ordinary stockholder, why should he get more leeway rather than less? I think you would hold him to a higher standard and therefore his ability to discover the facts that are readily accessible in public filings and press releases and the like, certainly he has that capacity. The other thing he has... Yes, so then why... I don't know why these facts are supposedly in your favor. Because, Your Honor, it's clear that he could have... He more than some other person could have figured this out. Exactly. And in fact, we know from the face of the complaint that he did figure it out. He does plead the terms of the transactions about which he complains. But he figured it out late for a statute of limitations. So do you want us to create classes or categories? So he's a really sophisticated investor and he's chatted with the CEO and the CFO. So in that case, we should say he should be able to figure this out, ab initio. Now, you get a doctor who's investing, you know, he kind of knows his way around. We create a middle category. And then you get me. A venerated federal judge who has a lot of money invested somewhere, doesn't know much about the internet. That's a third category. Leads to a broker to figure it out. I'm not asking you to create classes, Your Honor, but simply to recognize that the Pennsylvania Supreme Court says you can take into account those differences. And I just think what's unique about this case is that unique status is pled on the face of the complaint. And not only did he have those unique attributes, he also had a right to demand the books and records of the trust. So you're asking us, in the alternative, if we don't affirm on the 12 v. 6, on the findings made by the court that we should affirm on the failure to satisfy the discovery rule. That's correct, Your Honor. Could he, of the Pennsylvania Supreme Court case on the objective test, Checchio, you said? I believe Checchio. There's Checchio and also Fine. They both, I think. It's Fine and Gleason. I'm sorry. Gleason is the most recent pronouncement by Justice McCaffrey. Okay, thank you. Thank you. Mr. Bashford, do you reserve rebuttal? I'm sorry, I think there may be a series of others. Oh, that's true. We have the one-minute folks coming up. I want to see what y'all can do in one minute. I really do. I never agree with one minute. Quite a disagreement. Okay, ready, start, go. May it please the court. Yellow light. John T. Ryan for the Ligon defendants. Ligon Pharmaceuticals and John Higgins, Ligon's CEO. I do have a very brief time and I just want to make a few points. Ligon's only involvement in this matter was its purchase of the IL-9 program. So we are only interested in the IL-9 program as it relates to Ligon. But you're interested in our affirming the district court, aren't you? I am very much, Your Honor. And I do want to point out one thing. We quoted a colloquy from the district court oral argument. Judge Schiller heard lengthy oral argument about a year ago in this courthouse in one of the lower floors. You gave him more than a minute. He did have more than a minute and my time is ticking. Give us the quote. It is. Judge Schiller said, but it puts you on notice that you got to start looking into something, didn't it? And the answer from plaintiff's counsel, Mr. Squitieri, was yes. So he had an opportunity. He conceded that he had to start looking into it. And that was as of the May 2010? Correct. Correct. The transaction was announced on May 18th. The press release by Ligon, which disclosed biotechnology value funds involvement, was on May 21st. May 24th, Ligon issued the 8K. The lawsuit was not filed until, I'm sorry, June of 2012. Great. Thank you very much. Thank you very much, Ron. Next up, Mr. Weil. Very briefly, Your Honors. My name is Jeff Weil. I represent the BVF defendants. I just want to note that in his reply brief filed with this court, the plaintiff appellant improperly characterized my defendant, the BVF defendants, as a generic insider, presumably to support the narrative of conspiratorial conduct and less-than-arm's-length transactions. In fact, as the record makes clear, BVF is not and never was a generic insider, as that term is defined by the SEC. Does that matter in terms of what's before us? Not in terms of the statute of limitations argument, only if you get to the alternate grounds which have been briefed, Your Honor. So I'm really not addressing the statute of limitations argument. But as the SEC makes clear, you're only an insider if you had someone on the board of directors, which BVF did not, if you had an officer on the company, which BVF did not, or if you own 10 percent or more of the stock, which BVF did not. And that's a point that is conceded by the plaintiff in a footnote filed with the district court and found at page 1224 of the appendix. That's all I have. Thank you. Thank you. May it please the Court, Michael Blanchard on behalf of the access defendants. Succinctly, I'm not here to address the statute of limitations while the Court should affirm on those grounds. I just want to point out that there are other additional arguments that were raised below that Justice would militate in favor of affirming on in the event that the statute of limitations argument did not prevail. With respect to my clients, the access defendants, they were alleged to do nothing but lose $1.5 million, developing PECCDM and giving it back to the trust, and that's it. They're sued for aiding and abetting. There's no knowing participation that is alleged as required, and with that, those claims should be dismissed as implausible. And the Court could affirm on those grounds as well. Thank you. Thank you. Now, Mr. Beck. Thank you. The PA Supreme Court case is Fine v. Cecchio, so that's one case. And the other case is Wilson v. LDF. And what those two cases establish is that merely because the plaintiff had the ability to find out that she was injured as a result of the defendants' acts does not necessarily start the statute of limitations. Well, we're talking surgery here. Those were cases where she could have gotten the medical records and found out that that's what it said. But there's no reason to believe not put on notice. And as someone just mentioned, Judge Shiller said, you know, you've got to start looking into something, as of May 2010. It's as if someone said to her, you know, what's that bulge in your side? Well, let's focus on what the supposed concession was in oral argument, because what was said there, and I don't think it was a concession by plaintiffs, is that at most the discovery rule has approximately two weeks' worth of work to do here. So we're not talking about a situation where we're seeking to invoke the discovery rule because the case was horribly untimely. I recognize that a statute of limitations can be applied rigidly, but the fact that the discovery rule does not have much work to do makes the burden on plaintiffs easier to satisfy in showing that the conduct was reasonable and that you only need two to three weeks of an extension. I'm not sure I see it that way, that if you, you know, it took you four or five years, there was something going on. But two weeks or whatever makes it like, well, why couldn't you have found it out earlier? Well, you're a month out, right? I mean, that's what we're talking about. I think it's three weeks is what I calculated between the May date and the June date. Okay. But a month is fine for rule of thumb purposes. Great. My point is this. As we're looking at this, whether it's a day or month or six months isn't relevant in my view. It's what did the plaintiff do, right, that they can now allege. So the quote that was read earlier by Judge Rendell is from a case called Fox v. Byrne, which is a Pennsylvania Superior Court case. Right. And I'm sure you're familiar with it. And it says there are two opportunities for the plaintiff to come forward, either independently in the complaint or in response to the affirmative defense being asserted. Right. So you have that opportunity, and we're obviously continuing to probe. That's the real question. So whether it's a day, a week, three weeks, really isn't it. The question is, what's the impediment? Now, if we follow what your adversary has suggested, we'll come up with a permutation on the rule, which will say, in my view, it's a permutation. My colleagues may disagree hypothetically, but if we did, we'd say, now when we have a sophisticated investor, we should put more of a burden for that person to come forward with more information, because they have available to him not only access, but the ability to gain access and the knowledge to know where to look. So with all that in mind, how can we view this in the way in which you'd like us to do it? Well, let me just begin by saying we disagree that we had the same opportunity we would have had in state court where we could come back with factual averments. Our fault, to the extent there is a fault, is that we played by the rules and that we said we're stuck with the complaint at this point. We're going to show where in the complaint we think we satisfied the discovery rule instead of trying to bring in extraneous evidence that the judge could not properly consider at that stage. So we did not bring in extraneous evidence to show how we satisfied the rule, but that would have been available to us in state court under the ability to file new matter, which allows you to bring in facts that are other than the complaint. I'm confused. So you don't want to rely on the Pennsylvania discovery rule? No, we do. I'm saying that the procedure in state court is different from the procedure in federal court. And so... But you chose the court in which to sue. That's true. And we're not complaining about the fact that we adhered to the rules in federal court. What we're saying is that it's unfair that the defense gets to bring in all this stuff and that we're not supposed to. And we didn't. The issue is on the face of the complaint. And on the face of the complaint as it is now, as I said before, you've got May 2010 as the last event to complain of. But you could have amended your complaint to tell the court chapter and verse why between May 2010 and sometime in 2011, you were prevented, basically. You exercised reasonable diligence, but notwithstanding that, you could not. And you could have pled that in your complaint. So, I mean, I challenge you with respect to this procedural difficulty, I think. Well, we did make that argument in our briefs and oppositions. It's not clear to me what you claim the defendants did. It seems to me that it's failure to give you something is what you're complaining about. You're not complaining about a specific event, are you? We're complaining about the fact that the sale prices were unfairly low for these assets and that we did not learn of that until 2011. But did not learn is not, we could not. Based upon information that was. Okay, well, that was when Genera Trust made the information available to its shareholders was in 2011. And what the defendants were saying was, well, you could have found out some other way from either the purchasers, SEC filings. You should have found out. That's what they're saying, right? Yeah. And Judge Slover, as you recognized in the Merck and Company Securities case, which the U.S. Supreme Court affirmed, encouraging early filings of securities-type litigation is not always the thing the courts want to do because that, on balance, ends up with more frivolous litigation than less. And Judge Greenaway, you, in the Knoppick case, applied Pennsylvania's discovery rule and recognized- Did I do anything good? I think that you were- That's why he's saving you for last. Everything you do, Judge Reddell, is wonderful. So with that, I will thank the court. Thank you very much. Case is well argued. We'll take it under advisement.